**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **STEPHANIE J. MAXWELL,** | |
| Plaintiff, | |
| v. | **Case No.: _____** |
| **ST. FRANCIS HEALTH CENTER,** **H. KENT HOLLINS P.A., and MR. H. KENT HOLLINS,** | **Jury Trial Demand** |
| Defendants. | |

## COMPLAINT

Plaintiff Stephanie J. Maxwell, by and through undersigned counsel, brings this action against Defendants St. Francis Health Center, H. Kent Hollins, P.A. and Mr. H. Kent Hollins, as an individual, and alleges as follows:

### INTRODUCTION

1.      Plaintiff Stephanie J. Maxwell ("Plaintiff" or "Lt. Maxwell") is a decorated military veteran who has been in United States Air Force continuously since 2009.

2.      Defendant H. Kent Hollins P.A. ( "HKH") is a debt collector in the State of Kansas.

3.      Defendant H. Kent Hollins ("Mr. H. Kent Hollins), the individual, is an attorney licensed to practice law in the State of Kansas, and is a debt collector as that term is defined in the FDCPA.

4.      Defendants HKH and Mr. H. Kent Hollins flood the Courts of this State with debt collection lawsuits on a massive scale.

5.      Once Defendants HKH and Mr. H. Kent Hollins flip on his debt collection machine – usually by obtaining a default judgment – it does not stop until he gets paid.

6.      Unbeknownst to Lt. Maxwell, Hollins filed a lawsuit against her after she joined the military in 2009 in Shawnee County, Kansas.

7.      Defendants HKH and Mr. H. Kent Hollins claim to have served her in June of 2009.

8.      Defendants HKH and Mr. H. Kent Hollins then continued and stayed the suit for a period of six years due to Lt. Maxwell's status as active duty military, yet proceeded to request and receive a default judgment against her and garnish her bank account.[1]

9.      Upon learning of this lawsuit and garnishment in 2015, and as a result of the improper and illegal debt collection conduct (false affidavits, wrongful garnishment, etc.) described herein, Lt. Maxwell experienced severe emotional distress during a time in which Lt. Maxwell was on active duty in the military at pilot training school working 12 hours a day and studying at home during her off hours.

10.      During this already stressful time in her life (Air Force pilot school is extremely competitive), Defendants HKH and Mr. H. Kent Hollins and the City of Topeka thought it wise to garnish her USAA bank account.  This affected her performance at work, and her ability to focus while studying at home.  Terrified of being kicked out of her pilot training program, she was forced to sit down with her Commander to explain the situation.

11.      In addition, outstanding debt collection issues in the military are extremely relevant to an individual's specific security clearance.  As such, Lt. Maxwell feared that her Top Secret security clearance would be downgraded or revoked as result of these debt collection activities.

---

[1] In 2009, Defendants HKH and Mr. H. Kent Hollins filed two lawsuits back to back in the District Court of Shawnee County, Kansas against Lt. Maxwell.  The first, Case No. 2009-LM-006582, involved the City of Topeka suing Lt. Maxwell over an alleged overdue water bill.  The second, Case No. 2009-LM-006593, involved an alleged debt owed to St. Francis Health Center.  It was the City of Topeka's lawsuit that resulted in the garnishment of Lt. Maxwell's bank account.  The City of Topeka was served with a demand under the Kansas Tort Claims Act pursuant to K.S.A. 12-105b(d) on or about December 15, 2016.  Unless a settlement is reached, the City of Topeka will be joined to this case within 120 days of December 15, 2016, on or around April 15, 2017.

This debt collection issue also caused marital strife between Lt. Maxwell and her husband, who were looking to purchase a new home and had just been pre-approved for such a purchase.

12.     In addition to the foregoing, these debt collection efforts resulted in the following manifestations of emotional distress including, but not limited to, anger, anxiety, concentration loss, crying, fear of answering the door, fear of answering the phone, freaking out, embarrassment with family and friends and others, humiliation, marital strife, panic attack, privacy loss, loss of reputation, affecting relationships negatively, sadness, shame, sleep loss, and worry.

13.     The conduct perpetrated upon Plaintiff Stephanie Maxwell provides an illustrative example of the systemic flaws in Hollins' debt collection machine.

14.     In this case, the debt collection machine did not stop until Hon. Evelyn Wilson, the Chief Judge of the District Court of Shawnee County, set aside the default judgment against Lt. Maxwell in May of 2016.

15.     In doing so, Hollins' debt collection practices were openly rebuked and paved the way for Lt. Maxwell to bring this lawsuit.

16.     Upon information and belief, Hollins engages in a pattern and practice of unlawful debt collection practices in the State of Kansas by filing incomplete service returns, filing false affidavits, and sewer serving consumers.

17.     As a result of this conduct, Defendant St. Francis Health Center, through its agents Defendants HKH. and Mr. H. Kent Hollins, violated the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C.§ 3901, *et seq*.; the Kansas Consumer Protection Act, ("KCPA"), K.S.A. § 50-623 *et seq*.; and in violation of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.§ 1692 *et seq*, in addition to and together with other state law claims, which Plaintiff now brings.

18.     The purpose of the SCRA is to provide service members with protections against certain civil proceedings that could adversely affect their legal rights while they are in military service.  50 U.S.C. § 3902.

19.     Two of those protections are the requirements that individuals and entities seeking to collect a debt through litigation conduct a diligent search to determine if the debtor is in active service as a member of the military.  The other protection is the requirement that a default judgment not be entered against a service member on active duty without the filing of an affidavit stating whether or not the debtor is in military service and showing necessary facts in support thereof.

20.     The purpose of the KCPA is to "increase the power both the attorney general and the private consumer to fight deceptive sales practices."  *State ex rel. Miller v. Midwest Service Bureau of Topeka, Inc.*, 229 Kan. 322, 324, 623 P.2d 1343, 1345 (1981).  "[The KCPA] declares that the act is to be construed liberally to promote certain public policies, among which is included the protection of consumers from suppliers who commit deceptive and unconscionable practices." *Id*.  The act applies to debt collection activities, whether conducted by a creditor or by an agent of the creditor.  *Id*.

21.     The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) (quoting 15 U.S.C. § 1692(e)).

22.     To accomplish its purposes the FDCPA broadly prohibits all abusive, deceptive or misleading, and unfair or unconscionable debt collection practices.  *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).  Because the FDCPA is a remedial statute, this Court must liberally

construe it in favor of consumers. *McDaniel v. South & Associates, P.C.*, 325 F. Supp. 2d 1210, 1215 (D. Kan. 2004).

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 50 U.S.C.A. § 3912(c) and has supplemental jurisdiction for state law claims under 28 U.S.C. § 1367.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a result of the occurrence of acts within this district by Defendants.

## FACTUAL ALLEGATIONS

### A. *Allegations Concerning Parties*

25.     At all times material hereto, Plaintiff Stephanie J. Maxwell, was *sui juris* and formerly a resident of the State of Kansas.

26.     At all times relevant hereto, Plaintiff, either as Enlisted or an Officer, was on active duty with the United States Air Force.

27.     Defendant H. Kent Hollins PA ("HKH") is a Kansas entity.

28.     At all times relevant hereto, Defendant HKH was and is engaged in collecting consumer debts all within Kansas.

29.     Defendant Mr. H. Kent Hollins, is a Kansas attorney, and a debt collector.

30.     At all times relevant hereto, Defendant Mr. H. Kent Hollins was engaged in the collection of consumer debts for his principals, Defendant St. Francis Health Center Inc. and the City of Topeka – Water Department.

31.     Defendant St. Francis Health Center Inc. ("St. Francis") is a Kansas corporation.

32.     At all times relevant hereto, Defendant St. Francis was and is engaged in providing medical services all within Kansas.

**B.  _Details Concerning Wrongful Debt Collection_**

33.     Plaintiff, after enlisting in the United States Air Force on April 9, 2009, and reported for Active Duty on April 14, 2009 at Lackland Air Force Base in San Antonio, TX.

34.      Plaintiff has served on Active Duty continuously from April 14, 2009 through the filing of this action.

35.     From 2009 until 2014, Plaintiff served as an enlisted Airman, rising to the rank of Sergeant (E-5), and deployed to Bagram Air Base, Afghanistan with the United States Air Force Expeditionary Force in support of Operation Enduring Freedom.

36.     Plaintiff was chosen at the beginning of 2014 to attend Officer Training School, where she graduated with distinction, and currently holds the rank of First Lieutenant.

37.     Defendant St. Francis, through their agents Defendants HKH and Mr. H. Kent Hollins filed case number 2009-LM-006583 in Shawnee County, Kansas on April 24, 2009.

38.     Defendant St. Francis, through their agents Defendants HKH and Mr. H. Kent Hollins claimed to have effectuated proper service by tacking at 4301 NW Westgate Rd, Topeka KS 66618 on June 11, 2009.

39.     Defendant St. Francis, and its agents Defendants HKH and Mr. H. Kent Hollins filed affidavits with the court stating that they had run Defense Manpower Data Center (DMDC) search for Plaintiff and determined that she had been on Active Duty since April of 2009.

40.     Because Defendants HKH and Mr. H. Kent Hollins had determined that Plaintiff had been on Active Duty since April of 2009, Defendant St. Francis, and its agents Defendants HKH and Mr. H. Kent Hollins, knew they had not effectuated proper service because the DMDC search they had run for Plaintiff determined that she had been on Active Duty since April of 2009 and could not have been residing in Topeka, KS.

41.     From 2009 until 2015, Defendants St. Francis, through their agents Defendants HKH and Mr. H. Kent Hollins filed numerous Requests for Continuances and Motions to Stay when they had actual knowledge that the Plaintiff was not residing at the address at which Defendants had professed it had obtained service.

42.     From 2009 until 2015, Defendant St. Francis, through its agents Defendants HKH and Mr. H. Kent Hollins filed numerous and Affidavits of both Military Service and Non-Military Service.

43.     On or about January 13, 2015, Plaintiff telephoned Defendants HKH and Mr. H. Kent Hollins and informed them that she was employed with the U.S. Military.  During this telephone conversation, Plaintiff indicated that she was seeking proof in writing of the underlying debt.

44.     On or about January 20, 2015, Defendants again attempted to effectual service upon Plaintiff, this time at an address in Enid, Oklahoma.

45.     On and around January 20, 2015 Plaintiff was in Enid, Oklahoma on active duty with the U.S. Air Force, and was stationed at Vance Air Force Base.

46.     The service effectuated on January 13, 2015 in Enid, Oklahoma was outside the time for return prescribed by K.S.A. § 60-312(d) of a maximum of 90 days.

47.     Therefore, the service on or about January 20, 2015 did not relate back to the initial professed service and the statute of limitations had run on all allegations of Defendants.

> 50 App. U.S.C. §521 of the SCRA provides *"[i]n any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit... stating whether or not the defendant is in military service and showing necessary facts to support the affidavit... and certified or declared to be true under penalty of perjury."*

48. On March 6, 2015, Defendants HKH and Mr. H. Kent Hollins took a default judgment for the benefit of Defendant St. Francis.

49. Prior to taking the default judgments, Defendants HKH and Mr. H. Kent Hollins filed affidavits with the court stating:

      a. That Defendant Mr. H. Kent Hollins is an attorney licensed to practice in Kansas who regularly engages in consumer debt collection, in the State of Kansas.

      b. That Defendants HKH and Mr. H. Kent Hollins was "hired by St Francis Health Center to collect a debt and file suit against Stephanie J. Palmisano."

      c. That Defendants HKH and Mr. H. Kent Hollins filed suit on behalf of Defendant St. Francis in the Limited Actions Department of the Shawnee County District Court.

      d. That on June 30, 2009 Defendants HKH and Mr. H. Kent Hollins performed a search on the Defense Manpower Data Center's website, learning that Plaintiff was active duty military.

      e. That on December 28, 2009 Defendants HKH and Mr. H. Kent Hollins performed a second search on the Defense Manpower Data Center's website, and confirmed that Plaintiff was active duty military.

      f. That on June 28, 2010 Defendants HKH and Mr. H. Kent Hollins performed a third search on the Defense Manpower Data Center's website, again confirming that Plaintiff was active duty military.

      g. That Defendants HKH and Mr. H. Kent Hollins conducted three more searches of the Defense Manpower Data Center's database, each time confirming that Plaintiff was active duty military.

h.      That on January 13, 2015, Defendants HKH and Mr. H. Kent Hollins received a telephone call from Plaintiff.  During this call Plaintiff indicated that she was "employed by the military."  Additionally, during this telephone call Plaintiff indicated that she would be seeking written confirmation that the debt was valid.

50.     A true and correct copy of that affidavit is attached hereto.

51.     The affidavits were filed and a default judgment sought by Defendants HKH and Mr. H. Kent Hollins while it knew, or should have known, the statements were false as to Plaintiff's status as a service member.

> 50 App. U.S.C. §537 of the SCRA further provides  "*[a]person holding a lien on the property or effects of a service member may not, during any period of military service of the service member and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement.*"

52.     Defendant St. Francis, and its agents Defendants HKH and Mr. H. Kent Hollins failed to receive a court order mandated by the SCRA before taking a default judgment and issuing garnishments against Lt Maxwell.

53.     As a result of the issued garnishment, money was withdrawn from Lt. Maxwell's bank account causing fees to be incurred.

54.     On April 20, 2015 a *Nelson v. Miller* demand letter was sent by the undersigned to Defendants HKH and Mr. H. Kent Hollins asking Defendants to set aside the aforementioned default judgment, and in an attempt to amicably resolve this matter prior to involving the courts.

55.     Defendant HKH, through Defendant Mr. H. Kent Hollins refused to voluntarily set aside the aforementioned judgment.

56.     On July 9, 2015 Plaintiff moved the Court to Set Aside/Vacate the March 6, 2015

Default Judgment.

57.     On May 10, 2016 the Court granted Plaintiff's Motion to Set Aside/Vacate the March 6, 2015 Default Judgment, and found that Defendants had not obtained service on Lt. Maxwell.

58.     To date, Defendants have not reimbursed the fees Lt. Maxwell incurred as a result of the wrongful garnishment.

59.     Defendants St. Francis and its agents, Defendants HKH and Mr. H. Kent Hollins are vicariously liable for the actions and omissions of its agents and employees.

60.     At all-times relevant to this Complaint, Defendants HKH and Mr. H. Kent Hollins were acting on behalf of St. Francis, at the direction of St. Francis and/or as an agent of St. Francis.

**COUNT ONE:**
**SERVICEMEMBERS CIVIL RELIEF ACT**
**(50 U.S.C.A. APP. § 3901, *et seq.*)**
**All Defendants**

61.     This is action for damages for violation of the Servicemembers Civil Relief Act, 50 U.S.C.A. § 3901, *et seq* ("SCRA").

62.     Plaintiff re-alleges and reaffirms the allegations contained in the above paragraphs, as if set forth here in full.

63.     At all times material hereto, Plaintiff was a "servicemember" [sic] as said term is defined under 50 U.S.C.A. § 3911(1).

64.     At all times material hereto, Plaintiff was in "military service" as that term is defined under 50 U.S.C.A. § 3911(2).

65.     By conduct described in greater detail above, Defendant St. Francis and its agents Defendants HKH and Mr. H. Kent Hollins violated the SCRA by filing affidavits in support of

their motions for default judgment that they knew or should have known were false, regarding Plaintiff's status as a service member.

66.     Defendant St. Francis, and its agents Defendants HKH and Mr. H. Kent Hollins violated the SCRA by taking a default judgment and subsequently requesting garnishments against Plaintiff while having actual knowledge that she was a service member.

67.     In fact, the Department of Defense Manpower Data Center search website used by Defendants HKH and Mr. H. Kent Hollins states:

> "If you have evidence the person was on active duty for the active duty status date and you fail to obtain additional Service verification, punitive provisions of the SCRA may be invoked against you".  50 U.S.C.A. § 521(c).

68.     Defendants had such evidence that Stephanie was in the military, and failed to obtain the additional verification as required by the statute.

69.     As such, Defendants are in violation of 50 U.S.C.A. § 521(c) and punitive damages may be invoked against them.

70.     Defendant St. Francis, and its agents Defendants HKH and Mr. H. Kent Hollins violated the SCRA acted knowingly, willfully and maliciously and in deliberate and wanton disregard for the rights of Plaintiff by taking a default judgment in violation of the SCRA and making representations to the court that they knew or should have known to be false.

71.     The default judgment described above is a "judgment" as that term is defined in 50 U.S.C.A. § 3911(9).

72.     As a direct and proximate violation of the SCRA by Defendant St. Francis, and its agents Defendants HKH and Mr. H. Kent Hollins, Plaintiff has been damaged.  The damages of Plaintiff include but are not necessarily limited to harm to reputation and disparagement of her character, mental pain, anguish, and shock, suffering, aggravation, humiliation and embarrassment

associated with having her bank account garnished, all consistent with the legislative intent and purpose of the SCRA protections.

73.     Plaintiffs harm to her reputation is especially severe, in light of her status as a leader and officer in the United States Air Force.

74.     Harm to Plaintiff's reputation, in light of her status as a U.S. Air Force Officer, negatively reflects upon herself and negatively affects Plaintiff's advancement opportunities, including but not limited to, Plaintiff's ability to obtain a security clearance required for her rank and military occupational specialty.

75.     The actions of Defendants St. Francis, HKH, and Mr. H. Kent Hollins were in wanton and reckless disregard for the rights of Plaintiff to the extent that punitive damages are warranted.

76.     Pursuant to 50 U.S.C.A App. § 597a(b), Plaintiff is entitled to recover her reasonable attorney's fees and punitive damages and court costs for the filing of the instant action.

WHEREFORE, Plaintiff Stephanie J. Maxwell, an individual, demands judgment against Defendants St. Francis, and its agents Defendants HKH and Mr. H. Kent Hollins, for compensatory and punitive damages, together with costs and attorneys' fees pursuant to 50 U.S.C.A. App. § 597a.

### COUNT TWO:
### THE KANSAS CONSUMER PROTECTION ACT
### (K.S.A. § 50-623, *et seq.*)
### All Defendants

77.     Plaintiff re-alleges and reaffirms the allegations contained in the above paragraphs as if set forth here in full.

78.     Plaintiff is a consumer as defined by K.S.A. § 50-624(b) (2001).

79.     Defendants are a suppliers as defined by K.S.A. § 50-624(I) (2009) when it pertains to activities involving the enforcement of consumer transactions.

80.     In *State ex rel. Miller v. Midwest Service Bureau of Topeka,* 229 Kan. 322, 623 P.3d 1343 (1981) the Supreme Court of Kansas applied the KCPA to independent debt collectors under the following circumstances:

> *(1) The debt sought to be enforced came into being as a result of a consumer transaction;*
>
> *(2) The parties to the original consumer transaction were a "supplier" and a "consumer" as defined in the act; and*
>
> *(3) The conduct complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction and was owed by the consumer to the original supplier.*

*Miller*, 299 Kan. at 329 (emphasis added).

81.     The transaction at issue is a consumer transaction as defined by K.S.A. § 50-624(c) (2011).

82.     K.S.A § 50-626 (2011) provides:

> *(a)      No supplier shall engage in any deceptive act or practice in connection with a consumer transaction.*

83.     K.S.A § 50-626 (2009) provides a non-exhaustive list of deceptive practices, a few of which in pertinent part are as follows:

> *(b)      Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:*
>
> *(1)      Representations made knowingly or with reason to know that:  (B) the supplier has a . . . status . . . that the supplier does not have;*

> (3)     The willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . . [.]

> (8)     Falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer . . . obligations.

84.     Defendants' acts and omissions as described above were deceptive in violation of K.S.A. § 50-626.

85.     Each act or omission described above constitutes a separate violation of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq*.

86.     Defendants conduct also constituted unconscionable conduct in violation of the KCPA.  Defendants' violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

(a)     Taking advantage of the consumer's inability to protect their interests because of their ignorance of the law, in violation of K.S.A. § 50-627(b)(1);

(b)     Entering into a consumer transaction which was excessively one-sided in favor of the supplier, in violation of K.S.A. § 50-627(b)(5);

(c)     Making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment, in violation of K.S.A. § 50-627(b)(6);

(d)     Violations of K.S.A. § 50-627(a) which include, but are not limited to, the following: Illegally garnishing Stephanie's bank account, falsely representing, the amount owed on the alleged debt, and engaging in a pattern of conduct that, when taken in its totality, was unconscionable.

Because of Defendants' deceptive acts, Plaintiff has been harmed and incurred damages in the form of attorney's fees incurred; wrongfully paid money; and wrongfully issued judgments against her, causing emotional distress and mental anguish, in addition to

harming Plaintiff's reputation and disparaging her character.

87.    Because of Defendants' deceptive and unconscionable acts, Plaintiff has incurred attorneys' fees and is entitled to injunctive relief.

88.    For the benefit of the general public, Plaintiff requests and is entitled to an injunction calculated to curb and prevent Defendants HKH and Mr. H. Kent Hollins from continuing its practices in the State of Kansas of violating the Kansas Consumer Protection Act by engaging in the acts and practices set forth above, which include filing false affidavits with the Courts of this State, filing inadequate service returns with the Courts of this State and sewer serving individual consumers.

WHEREFORE, Plaintiff Stephanie J Maxwell, respectfully prays for judgment on Count II against Defendants and requests the Court:

      a.    Issue a declaratory judgment that Defendants have violated the Kansas Consumer Protection Act;

      b.    Award actual damages to Plaintiff;

      c.    Issue an injunction against Defendants precluding it from continuing the deceptive acts;

      d.    Award costs and reasonable attorneys' fees, pursuant to K.S.A. § 50-634; and

      e.    Such other and further relief as the Court deems just and equitable.

**COUNT THREE:**
**FAIR DEBT COLLECTION PRACTICES ACT**
**(15 U.S.C. § 1692 *et seq.*)**
**Defendants H. Kent Hollins P.A. and Mr. H. Kent Hollins Only**

89.    Plaintiff re-alleges and reaffirms the allegations contained in the above paragraphs as if set forth here in full.

90.     This Count Three is for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

91.     Plaintiff is a consumer as defined by 15 USC § 1692a(3) of the FDCPA.

92.     The principal purposes of Defendants HKH and Mr. H. Kent Hollins are the collection of consumer debts using the mails and telephone, and Defendants regularly attempt to collect debts alleged to be due another.

93.     Defendants are  debt collectors as defined by 15 USC § 1692a(3) who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another or by taking of assignment of a debt already declared to be in default by the originating creditor.

94.     Defendants were attempting to collect a consumer debt as defined by 15 USC § 1692a(5) as an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

95.     The standard in determining whether the Defendants violated the FDCPA is the least sophisticated consumer standard.  Claims should be viewed from the perspective of a consumer whose circumstances make him relatively more susceptible to harassment, oppression or abuse.  *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2nd Cir. 1998); *Swanson v. Southern Oregon Credit Service*, 869 F.2d 1222, 1225-27 (9th Cir. 1988); *Jeter v. Credit Bureau,*

*Inc.*, 760 F.2d 1168, 1172 -75 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Smothers v. Midland Credit Management, Inc.*, No. 16-cv-2202-CM, 2016 WL 7485686, at *2 (D. Kan. Dec. 29, 2016).

96.    The above-described actions of Defendant HKH violated the FDCPA.   Such violations include, but are not limited to:

(a) Section 15 U.S.C. § 1692e(5) of the FDCPA which states that a debt collector cannot take any action that cannot legally be taken; and

(b) Section 15 U.S.C. § 1692e(2)(a) of the FDCPA which states that a debt collector cannot falsely represent the character, amount, or legal status of any debt.

97.    The above-described acts are also misleading to the least sophisticated consumer.

98.

99.    As a result of the above violations of the stated Act, Defendants are  liable to the Plaintiff for actual damages; statutory damages up to $1,000.00 pursuant to 15 U.S.C. § 1692k; costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff Stephanie J Maxwell, respectfully prays that judgment be entered against the Defendants for actual damages; statutory damages pursuant to 15 U.S.C. § 1692k; costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and for such other and further relief as may be just and proper.

**COUNT FOUR:**
**COMMON LAW WRONGFUL GARNISHMENT**
**Defendants HKH and Mr. H. Kent Hollins Only**

100.    Plaintiff re-alleges and reaffirms the allegations contained in the above paragraphs as if set forth here in full.

101.    Defendants HKH and Mr. H. Kent Hollins, issued non-wage garnishments against

Plaintiff.

102.    The garnishment proceedings were initiated by Defendants without a good-faith belief that the judgment upon which those proceedings were based, was valid.

103.    The judgment upon which the garnishment order issued was later found to be void, and consequently the garnishment itself was wrongful.

104.    Funds in the possession of plaintiff were actually garnished.

105.    As a direct and proximate result of the taking of the garnishment, Defendants HKH and Mr. H. Kent Hollins, deprived Plaintiff of the use and possession of her funds.

106.    The garnishment further caused Plaintiff's bank to impose a fee of $100.00.

107.    As a direct and proximate cause of the garnishment violation by Defendants HKH and Mr. H. Kent Hollins, Plaintiff has been damaged.  The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment together with the loss of $100.00.

108.    The actions of Defendants HKH and Mr. H. Kent Hollins were in wanton and reckless disregard for the rights of Plaintiff to the extent that punitive damages are warranted.

WHEREFORE, Plaintiff, Stephanie J Maxwell, an individual, demands judgment in her favor and against Defendants HKH and Mr. H. Kent Hollins, for compensatory damages, together with costs and interest as allowed by law.

## COUNT FIVE:
## COMMON LAW ABUSE OF PROCESS
### All Defendants

109.    Plaintiff re-alleges and reaffirms the allegations contained in the above paragraphs as if set forth here in full.

110.    The Defendants made an illegal, improper and unauthorized use of the process by:

18

a.      Continuing to prosecute a case when Defendants knew, or should have known, that it had not effectuated proper service.

b.      Obtaining a judgment when Defendant knew, or should have known that it had not effectuated proper service.

c.      Obtaining non-earnings garnishments, while Defendants knew, or should have known, that they had not obtained a valid judgment.

111.    The Defendants had knowledge of the illegal, improper and unauthorized use of the process.

112.    The above-described misuse of process was done for the purpose of causing great inconvenience and great hardship to the Plaintiff, who had a judgment entered against her, and was wrongfully garnished.

113.    As a direct and proximate cause of the misuse of process by Defendant St. Francis and Defendants HKH and Mr. H. Kent Hollins, Plaintiff has been damaged.  The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment together with the loss of reputation.

114.    The actions of Defendant St. Francis and Defendants HKH and Mr. H. Kent Hollins were in wanton and reckless disregard for the rights of Plaintiff to the extent that punitive damages are warranted.

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants; for actual damages and for costs incurred and expended; and for such further relief as the Court deems just and proper.

**COUNT SIX**
**COMMON LAW NEGLIGENCE PER SE**
**Against Defendants St. Francis and HKH Only**

115.     Plaintiff re-alleges and reaffirms the allegations contained in the above paragraphs as if set forth here in full.

116.     As professional agencies regularly engaged in the collection of debts owed to themselves or third parties, Defendants St. Francis and HKH knew or had reason to know of the requirements of federal law with respect to the SCRA, including the obligation of Defendants St. Francis and HKH to conduct a thorough investigation of the military status of their customers.

117.     As professional agencies regularly engaged in the collection of debts owed to themselves or third parties, Defendants St. Francis and HKH had a duty to exercise reasonable care in in conducting DMDC investigations to comply with applicable law.

118.     In failing to discover or disclose their customer's status as service members, the Defendants failed to use that degree of skill and learning ordinarily used in the hiring, retention and supervision of their agents and employees, as ordinarily used under the same or similar circumstances by an expert in Defendants' respective business.

119.     As a direct and proximate result of the above described acts, Defendants St. Francis and HKH breached their duty of care to Plaintiff with respect to the investigations of her status as a Service Member.

120.     As a direct and proximate result of the negligence of Defendants St. Francis and HKH, Plaintiff has been damaged.  The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment together with the loss of reputation.

WHEREFORE, Plaintiff Stephanie J Maxwell, prays that the Court enter judgment in her

favor and against Defendants St. Francis and HKH; for actual damages and for costs incurred and expended; and for such further relief as the Court deems just and proper.

## COUNT SEVEN:
## COMMON LAW CONVERSION
### Defendants HKH and Mr. H. Kent Hollins Only

121.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

122.    At all relevant times, Plaintiff was the legal and rightful owner of the money contained in her bank account.

123.    At no point did Plaintiff authorize Defendants to take possession of the money in her account.  Because Defendants did not have Plaintiff's express or implied authorization to take money from her bank account, Defendants' conduct was unauthorized.

124.    Defendants took possession of Plaintiff's money by way of garnishing Plaintiff's bank account.

125.    In this case, Plaintiffs' damages include, but are not limited to, her emotional distress, deprivation of funds, and fees charged by the bank associated with the wrongful garnishment.

126.    Defendants' conduct was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

WHEREFORE, Plaintiff prays for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for her actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## COUNT EIGHT:

## INVASION OF PRIVACY/INTRUSION UPON SECLUSION
### All Defendants

127.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

128.     Defendants intruded, physically or otherwise, upon Lt. Maxwell's solitude, seclusion, and/or private affairs or concerns.

129.     Defendants' intrusion into Lt. Maxwell's solitude, seclusion, and/or private affairs or concerns is and was highly offensive to Lt. Maxwell especially given her sensitive situation being in active duty military and in pilot training school at the time.

130.     A reasonable person would find Defendants' intrusion into Lt. Maxwell's solitude, seclusion, and/or private affairs to be highly offensive.

131.     As a direct and proximate result of Defendants' intrusion into Lt. Maxwell's solitude, seclusion, and/or private affairs, Lt. Maxwell has suffered damages which include, but are not limited to, emotional distress and damage to reputation.

132.     Defendants' intrusion into Lt. Maxwell's solitude, seclusion, and/or private affairs was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

133.     WHEREFORE, Plaintiff prays for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for her actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

### COUNT NINE:
### OUTRAGE
All Defendants

134.     Plaintiff incorporates by reference all facts and allegations contained in the

foregoing paragraphs as though fully laid out herein.

135.    Defendants' conduct was intentional and/or in reckless disregard of Plaintiff's rights.

136.    Defendants' conduct was extreme and outrageous.

137.    As a direct and proximate cause of Defendants' extreme and outrageous conduct, Plaintiff suffered mental and/or emotional distress.

138.    Plaintiff's mental and/or emotional distress is and/or was extreme and severe.

139.    Defendants' conduct was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

WHEREFORE, Plaintiff pray for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for her actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*Respectfully Submitted*,

/s/ *Michael Rapp*

A.J. Stecklein        #16630
Michael H. Rapp      #25702
Brian E. Johnson      #26934
Stecklein & Rapp, Chtd.
748 Ann Ave
Kansas City, KS 66101
Telephone:     (913) 371-0727
Facsimile:     (913) 371-0727
Email: aj@kcconsumerlawyer.com
          mr@kcconsumerlawyer.com
          bj@kcconsumerlawyer.com

-and-

*/s/ Bryce B. Bell*

Bryce B. Bell          KS#20866
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com

**ATTORNEYS FOR PLAINTIFF**