IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


STEPHANIE J. MAXWELL,

                    Plaintiff,

vs.                                    Case No. 17-4014-SAC-KGS

ST. FRANCIS HEALTH CENTER, et al.,

                    Defendants.


## MEMORANDUM AND ORDER

Plaintiff, Stephanie J. Maxwell, is a military servicemember. She has brought this action against H. Kent Hollins and his law firm, H. Kent Hollins PA ("the Hollins defendants"). Plaintiff is also suing St. Francis Health Center and the City of Topeka who were represented by the Hollins defendants in two debt collection actions against plaintiff which were filed in 2009 when plaintiff's name was Palmisano. Plaintiff alleges defendants violated federal and state law in the debt collection efforts. This case is before the court upon defendants' motions to dismiss pursuant to FED.R.CIV.P. 12(b)(6).

## I. Rule 12(b)(6) standards

Upon a Rule 12(b)(6) motion, the court accepts plaintiff's well-pleaded factual allegations as true and determines whether plaintiff has provided enough facts to state a claim to relief

that is plausible on its face.  George v. Urban Settlement
Services, 833 F.3d 1242, 1247 (10th Cir. 2016)(interior quotation
omitted).  "[A] claim is facially plausible if the plaintiff has
pled 'factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged.'"  Id. (quoting Hogan v. Winder, 762 F.3d
1096, 1104 (10th Cir. 2014)).  The court may consider:
documents incorporated by reference in the complaint; documents
referred to in and central to the complaint, when there is no
dispute as to authenticity; and matters of which a court may
take judicial notice.  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th
Cir. 2010).  The court's function is not to weigh potential
evidence that the parties might present at trial.  See Proctor &
Gamble Co. v. Haugen, 222 F.3d 1262, 1278-79 (10th Cir. 2000).

II. Allegations in the complaint and documents referenced in the
complaint

       The following allegations are taken primarily from the
first amended complaint and almost identical affidavits filed by
defendant H. Kent Hollins in the state court debt collection
cases.  The court treats the affidavits as documents central to
the complaint as to which there is no dispute as to
authenticity.[1]

_____
[1] The affidavits are referred to in plaintiff's first amended complaint (at ¶
57) and they are attached as exhibits to the Hollins defendants' motion to
dismiss (Doc. Nos. 27-3 and 27-4).

Plaintiff alleges that she enlisted in the United States Air Force on April 9, 2009, reported to active duty on April 14, 2009, and has been on active duty continuously from that date through the date this action was filed. On April 24, 2009, St. Francis and the City of Topeka, through the Hollins defendants, each filed a debt collection lawsuit against plaintiff in Shawnee County District Court.

From December 28, 2009 through April 21, 2015, the Hollins defendants ran several searches on the Defense Manpower Data Center (DMDC) website to determine whether plaintiff was on active military duty. The searches were conducted under the name "Stephanie Palmisano" (plaintiff's maiden name) <u>and</u> her social security number. Through 2011, the searches showed that plaintiff was on active military duty. This caused the Hollins defendants to ask the court to stay the debt collection cases against plaintiff. According to the Hollins affidavits, which are supported by exhibits showing the search results, in 2012 and 2013 some searches showed that plaintiff was on active duty and some showed that plaintiff was not on active duty.[2]

On July 16, 2014, a DMDC search showed that Stephanie Palmisano was not on active duty. The Hollins defendants then requested and received an alias summons. On January 13, 2015,

---

[2] Paragraph 56 of the amended complaint indicates that all of the searches done in 2012 and 2013 showed that plaintiff was not on active duty. The difference between paragraph 56 and the Hollins affidavits is not important to the court's decision here.

plaintiff called the Hollins law firm and left a message. A law firm representative returned her call. During the conversation, plaintiff did not indicate that her name had changed. She stated that she was employed by the military.

The Hollins defendants attempted to serve plaintiff by certified mail on January 15, 2015 at an address in Oklahoma. The return indicated that it was "signed by other" and the green card showed that it was signed by the addressee "Stephanie Maxwell." The Hollins defendants conducted two other DMDC searches on February 16, 2015 and March 6, 2015. These showed that Stephanie Palmisano was not on active duty. The Hollins defendants did not search under the name Stephanie Maxwell until after default judgment was entered and they received a letter from plaintiff's attorney.

The Shawnee County District Court entered default judgment against plaintiff on February 24, 2015 in favor of defendant City of Topeka and on March 6, 2015 in favor of defendant St. Francis. The applications for default judgment alleged that proper service had been effected and, through an affidavit signed by defendant Hollins, that plaintiff was not on active military duty. The affidavit read in part as follows:

> I, H. Kent Hollins, of lawful age, and being first duly sworn, on oath state that I am the plaintiff or petitioner, in the above entitled case, and I make this affidavit pursuant to the provisions of the Service members Civil Relief Act of 2003; that I have

4

> caused a careful investigation to be made to ascertain whether or not the above named defendant or respondent is in the active service of the Army of the United States, the United States Navy, the United States Marine Corps, the United States Coast Guard, the United States Air Force, the National Guard or of any Public Health Service detailed by proper authority for duty with the military; and, that as a result of said investigation, I hereby state that the defendant or respondent is not in any of the above-named branches of the military service nor has the defendant or respondent received notice of induction or notice to report for active service.

Doc. No. 27-1, p. 5 and Doc. No. 27-2, p. 5.[3] Plaintiff alleges that it was false to represent in the affidavit that there had been a careful investigation and that it was false to represent that plaintiff was not in active military service.

The Hollins defendants received a demand letter referencing "Stephanie J. Maxwell (Palmisano)" from plaintiff's counsel in April 2015. The letter asked to set aside the default judgments. The Hollins defendants conducted another DMDC search using the name Stephanie Palmisano and her social security number. This search showed that plaintiff was not on active duty. The same day defendants did a DMDC search for Stephanie Maxwell and her social security number which showed that plaintiff was on active duty.

On July 9, 2015, plaintiff moved to set aside the default judgments. On May 10, 2016, the Shawnee County District Court granted the motion to set aside the default judgments on the

---

[3] The same language was used in four prior affidavits as found in Doc. No. 27-1, pp. 1-4 and Doc. No. 27-2, pp. 1-4.

grounds that defendants had not obtained proper service on plaintiff.

Plaintiff does <u>not</u> allege that the Hollins defendants were the employees of defendants St. Francis or the City of Topeka. Plaintiff does allege that the Hollins defendants were the <u>agents</u> of St. Francis and the City of Topeka.

III. <u>The Hollins defendants' motion to dismiss shall be granted in part and denied in part</u>.

A. <u>Count One – the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901 et seq.</u>

Plaintiff alleges that defendants are liable for damages under that part of the SCRA which penalizes the filing of a false affidavit regarding whether a defendant is in active military service prior to entering judgment. The SCRA at 50 U.S.C. § 3931(a)&(b) requires that in any civil action or proceeding in which the defendant does not make an appearance, the court, before entering judgment for the plaintiff shall require the plaintiff to file with the court an affidavit:

> (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

Subsection (c) further provides a possible criminal penalty for making or using an affidavit "<u>knowing</u> it to be false." (emphasis added). A civil cause of action is authorized under

6

50 U.S.C. § 4042 for appropriate relief, including monetary damages, to any person aggrieved by a violation the SCRA.

Defendants assert that plaintiff has not alleged facts describing a plausible claim that the Hollins defendants filed affidavits which were knowingly false. The SCRA does not define "knowing." The court is guided by its ordinary meaning. See U.S. v. Dobbs, 629 F.3d 1199, 1203-04 (10th Cir. 2011). So, the court asks here whether plaintiff's allegations state a plausible claim that defendants submitted an affidavit in possession of knowledge, intelligence or understanding that it was, or may be, false. See Oxford English Dictionary (online ed. 2017). In addition, the court follows the approach other courts have taken in construing a comparable statute, 18 U.S.C. § 1001.[4] Courts have determined that reckless disregard of the truth is sufficient to sustain a criminal conviction for the violation of § 1001. U.S. v. London, 66 F.3d 1227, 1241-42 (1st Cir. 1995); U.S. v. Puente, 982 F.2d 156, 159 (5th Cir. 1993); U.S. v. Gottlieb, 493 F.2d 987, 994 (2nd Cir. 1974)(person may be convicted for recklessly stating he was in the National Guard, when he didn't know whether or not he was in the National Guard); see also, U.S. v. Strandlof, 667 F.3d 1146, 1165 (10th Cir. 2012)(one can be prosecuted under § 1001 without

---

[4] Section 1001 in general makes it a crime to "knowingly and willfully" make any "materially false, fictitious or fraudulent statement or representation" in any matter within the jurisdiction of the executive, legislative or judicial branches of the United States Government.

intentionally lying) abrograted on other grounds, <u>U.S. v. Alvarez</u>, 567 U.S. 709 (2012).

According to the complaint and other documents referenced in the complaint, the Hollins defendants had knowledge that Stephanie Palmisano was on active military duty for about three years starting in April 2009. There were indications that the DMDC searches may be producing inconsistent results. The Hollins defendants also knew that she telephoned in January 2015 and told them she was employed by the military. A couple of days later a "Stephanie Maxwell" signed for a piece of certified mail sent to Stephanie Palmisano. This did not cause defendants to do a DMDC search for the name Stephanie Maxwell. The Hollins defendants were also aware that the DMDC website cautioned that further steps should be taken to check on the military status of persons if they had evidence that the person was on active duty for the active duty status date.[5] Given these alleged facts the

---

[5] The website states:

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 U.S.C. App. § 501 et seq. as amended)(SCRA)(formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" [website address]. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification,

court believes plaintiff has stated a plausible claim that the
Hollins defendants submitted a knowing false affidavit stating
that plaintiff was not on active duty and that they had
conducted a careful investigation as to her active duty status.[6]

B. Count Two – the Kansas Consumer Protection Act ("KCPA"),
K.S.A. 50-623 et seq.

In Count Two of the first amended complaint, plaintiff
alleges that defendants violated the KCPA because they committed
deceptive or unconscionable acts.  There is no dispute that the
KCPA applies to debt collection activities engaged in by a
creditor or his agent, including independent debt collection
agencies.  See State ex rel. Miller v. Midwest Service Bureau of
Topeka, Inc., 623 P.2d 1343, 1345 (Kan. 1981).  The court's
analysis here is guided in part by the KCPA provision stating
that it is to be construed liberally in order to protect
consumers from suppliers who commit deceptive and unconscionable
practices.  K.S.A. 60-623.

---

punitive provisions of the SCRA may be invoked against you.  See
50 U.S.C. App. § 521(c).
Doc. No. 27-4, p. 12.
[6] Plaintiff suggests that a less demanding standard for liability should be
applied for a civil action alleging a SCRA violation.  Because the court
finds that a cause of action has been described if a "knowing standard" is
applied, the court does not reach plaintiff's argument for a different
standard here.

## 1. Deceptive acts

Plaintiff's KCPA claims are not clearly stated in the first amended complaint.[7] The court relies upon the argumentation made in regard to the motions to dismiss to help delineate the claims. It appears to the court that plaintiff intends to claim that defendants violated K.S.A. 50-626(b)(2) and (3) which prohibit defendants from the following practices "in connection with a consumer transaction: . . . (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; [and] (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." Although, in ¶ 108 of the first amended complaint, plaintiff asserts that defendants also filed inadequate service returns and engaged in "sewer serving" individual consumers, it appears that plaintiff is relying upon the alleged filing of false affidavits as the actual basis of her KCPA claim.[8]

In the Hollins defendants' motion to dismiss, they claim that the first amended complaint does not allege any deceptive acts or practices that violate those sections of the KCPA in

---

[7] Plaintiff appears to admit as much in her response to the Hollins defendants' motion to dismiss. Doc. No. 38, p. 11.

[8] The first amended complaint also references 50-626(b)(1) and (b)(8). Doc. No. 18, ¶ 103. Subsection (b)(1) concerns representations made regarding property, services or rebates, discounts or other benefits tied to a consumer transaction. Subsection (b)(8) concerns false statements that a consumer transaction involves consumer rights, remedies or obligations. These provisions do not appear relevant to plaintiff's alleged facts.

spite of the obligation to plead the claim with particularity. Defendants also claim that plaintiff alleges no facts showing that the Hollins defendants willfully violated the KCPA as required for a violation of subsection (b)(3).

The court disagrees. The alleged false affidavits are described with particularity. These affidavits are alleged to contain falsehoods or the omission of material facts. Those facts are material to the enforcement of a consumer transaction which, according to Miller, is in the ambit of the KCPA.[9] While the affidavits may have been directed at a state court, plaintiff has alleged facts describing harm from the affidavits. This is sufficient for plaintiff to bring a KCPA claim since the statute does not plainly require that the falsehood or concealment be directed at a consumer.

Finally, although this is a close question, the court rejects the Hollins defendants' argument that plaintiff has not alleged facts showing willfulness. Sections 50-626(b)(2) and (3) require "willful" misconduct. A "willful" act is one performed with the intent to harm the consumer. Unruh v. Purina Mills, LLC, 221 P.3d 1130, 1139 (Kan. 2009). The Hollins defendants cite Tufts v. Newmar Corp., 53 F.Supp.2d 1171 (D.Kan.

---

[9] The Hollins defendants contend, in their initial brief but not in their reply brief, that plaintiff does not allege the violation of a duty to disclose a material fact. We reject this argument. The Hollins defendants had a duty to file truthful affidavits in support of their applications for default judgment and to proceed truthfully in the enforcement of a consumer transaction.

1999) for the proposition that they cannot be liable for a "willful" violation when they merely relied upon information from a third party, in this case the DMDC. Unlike Tufts, however, there are facts alleged in the complaint which provided the Hollins defendants plausible grounds to question the DMDC information and the care taken to investigate plaintiff's military status. This is sufficient at the pleading stage to plausibly allege a willful deceptive act and practice in violation of the KCPA.

## 2. Unconscionable acts

The KCPA prohibits unconscionable acts or practices in connection with a consumer transaction. K.S.A. 50-627(a). This is a question for the court which should consider such factors of which the supplier knew or had reason to know, such as, but not limited to: whether the supplier took advantage of the inability of the consumer to protect his interests because of a physical infirmity, ignorance, illiteracy or inability to understand or similar factor; whether the price charged was grossly excessive; whether the consumer received a benefit from the transaction; whether the consumer was likely able to make full payment; whether the transaction was excessively one-sided; whether a misleading statement of opinion was made upon which the consumer was likely to rely; and whether implied warranties were excluded or modified. K.S.A. 50-627(b).

The court finds that the misconduct alleged by plaintiff does not sink to the level of an unconscionable act or practice. It is not alleged that plaintiff was unable to protect her interests because of some infirmity or impediment to her understanding. Plaintiff was able to speak over the phone with the Hollins defendants prior to the entry of default judgment regarding the debt collection litigation. She contacted an attorney to represent her after the entry of default judgment. And, she was able to set aside the default judgments that were granted against her. The court finds that cases involving alleged improper service of process are analogous. In those cases, default judgment was dependent upon the false representation to the court that proper service of process had occurred. Here, the entries of default judgment were dependent upon the allegedly false representation that plaintiff was not on active military duty and that a careful investigation had been made of plaintiff's military status. In cases where default judgments were obtained on the basis of improper service, courts have found that the incorrect representation that service was properly obtained did not amount to an unconscionable act which violated federal or state law.

One such case is Briscoe v. Cohen, McNeile & Pappas, P.C., 2014 WL 4954600 (D.Kan. 10/1/2014). In Briscoe, it was alleged that the defendant law firm/debt collector applied for default

judgment on the basis of an incorrect representation that proper service had been effected, when there was evidence that the defendant should have known that service had been attempted at the wrong address. After surveying several cases, including another case from this district (Dillon v. Riffel-Kuhlmann, 574 F.Supp.2d 1221 (D.Kan. 2008)), Judge Crabtree concluded that this conduct was not unconscionable for the purposes of the Federal Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f, or the KCPA. We reach the same result here where plaintiff contends that the Hollins defendants represented that plaintiff was not on active military duty when there was reason to believe otherwise. See also, Thurow v. Professional Finance Co., Inc., 2017 WL 2864936 *5-6 (D.Colo. 7/5/2017)(court observes it is aware of no legal authority holding that ineffective service amounts to a deceptive or unconscionable debt collection practice in violation of the FDCPA); but see Owings v. Hunt & Henriques, 2010 WL 3489342 *5-6 (S.D.Cal. 9/3/2010)(false representation that debtor was not in the military service can form the basis for a FDCPA violation).[10]

Plaintiff contends that her allegations are analogous to those in Via Christi Regional Medical Center, Inc. v. Reed, 314 P.3d 852, 869 (Kan. 2013) where the court held that there was a

---

[10] The court in Owings remarked (at *6) that the defendants did not argue that the declaration was not false, misleading or unfair for the purposes of the FDCPA.

fact issue as to whether a hospital, with superior bargaining power over a former patient, engaged in unconscionable conduct in violation of the KCPA when it attempted to enforce a lien based upon a bill which contained overcharges and duplicate charges. This case is distinguishable from <u>Via Christi</u>, however. The falsehoods alleged in this case are much more easily understood, disputed and resolved than those involving the hospital billing practices in <u>Via Christi</u> which allegedly were "so confusing as to be intentionally misleading." 314 P.3d at 523.

C. <u>Count Three – Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 et seq.</u>

In Count Three of the first amended complaint, plaintiff alleges that the Hollins defendants violated the following sections of the FDCPA: § 1692e(2)(a); § 1692e(5); § 1692e(10); and § 1692f.[11] It appears that plaintiff is also generally claiming that the Hollins defendants have used a "false, deceptive or misleading representation or means in connection with the collection" of a debt, as prohibited in the first sentence of § 1692e. Plaintiff's response to the Hollins defendants' motion to dismiss appears to limit plaintiff's claim to the defendants' alleged failure to properly investigate plaintiff's military status before submitting a false affidavit

---

[11] Plaintiff does not name the City of Topeka or St. Francis as defendants in Count Three.

15

to secure a default judgment.  Doc. No. 38, p. 17.  The FDCPA, like the KCPA, should be liberally construed in favor of the consumer.  <u>Johnson v. Riddle</u>, 305 F.3d 1107, 1117 (10th Cir. 2002).

The Hollins defendants argue in general that the court should not recognize a cause of action under the FDCPA for what also may be a cause of action under the SCRA.  Doc. No. 50, p. 9.  We reject this contention.  "Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both."  <u>Connecticut National Bank v. Germain</u>, 503 U.S. 249, 253 (1992).

## 1. <u>§ 1692e(2)(a)</u>

This section prohibits a debt collector from making a false representation of the character, amount or legal status of any debt.  The court does not believe plaintiff's allegations plausibly describe such a false representation by the defendants.

## 2. <u>§ 1692e(5)</u>

This section prohibits a debt collector from making a threat to take any action that cannot legally be taken or that is not intended to be taken.  The court does not believe plaintiff's allegations plausibly describe a threat.  Plaintiff alleges that filing a motion for default judgment upon an

allegedly false affidavit describing a "careful investigation" of plaintiff's military status is a threat to take action that cannot legally be taken. A "threat" under this section of the FDCPA has been interpreted to be language that legal action is "authorized, likely and imminent." Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2nd Cir. 1993). The motion for default judgment in this case is a legal action itself, and is not a statement that legal action is authorized, likely and imminent. See Kalebaugh v. Berman & Rabin, P.A., 43 F.Supp.3d 1215, 1228-29 (D.Kan. 2014); Bunce v. Portfolio Recovery Associates, LLC, 2014 WL 5849252 *5 (D.Kan. 11/12/2014); Delawder v. Platinum Financial services Corp., 443 F.Supp.2d 942, 948 (S.D.Ohio 2005).

This interpretation of § 1692e(5) has been characterized as the minority view. E.g., Bradshaw v. Hilco Receivables, LLC, 765 F.Supp.2d 719, 730 (D.Md. 2011). The split among courts is significant, however. See, e.g., Vanhuss v. Kohn Law Firm S.C., 127 F.Supp.3d 980, 987-88 (W.D.Wis. 2015)(reviewing cases). The court chooses to follow the Kansas precedent here. It is consistent with the unambiguous language of the statute. We also note that this approach in this case does not bar plaintiff from proceeding with a FDCPA claim under § 1692e(10) or the general proscription against false, deceptive, or misleading misrepresentations contained in the first sentence of § 1692e.

### 3. § 1692e(10)

This section prohibits a debt collector from using a false representation or deceptive means to collect or attempt to collect any debt. The court finds for the reasons discussed in regards to plaintiff's claim under the KCPA, K.S.A. 50-626(2)&(3), that plaintiff has stated a claim for relief against the Hollins defendants under the similar provisions of § 1692e(10). See Toohey v. Portfolio Recovery Associates, LLC, 2016 WL 4473016 *9 (S.D.N.Y. 8/22/2016)(recognizing claim under § 1692e where plaintiff alleged debt collector filed false, deceptive and misleading affidavit in support of default judgment). The court acknowledges that this result differs from the result in Briscoe. In Briscoe, the court emphasized that the plaintiff did not allege that the defendant actually knew that service had not been accomplished when the defendant certified otherwise. Here, plaintiff makes allegations that the Hollins defendants certified that a careful investigation of plaintiff's military service was made and that this was a knowing or reckless misrepresentation. The court believes this is a significant distinction.[12]

The Hollins defendants further argue in a footnote to their opening brief that statements made to the court and not to

---

[12] The court further notes that most of the FDCPA cases discussed in support of the result in Briscoe do not involve § 1692e claims and that the court remarked (at *9) that the plaintiff had not supplied the court with contrary authority in support of the plaintiff's FDCPA claims.

plaintiff are not actionable under § 1692e.  Doc. No. 27, p.19
n.9.  Plaintiff cites a footnote in the Briscoe decision as
authority.  That footnote, in turn, alludes to O'Rourke v.
Palisade Acquisition XVI, LLC, 635 F.3d 938 (7th Cir. 2011) but
only remarks that it would provide additional authority to deny
the § 1692e claim in Briscoe if the Tenth Circuit were to adopt
the holding.  To this court's knowledge, the Tenth Circuit has
not expressly adopted the O'Rourke holding.  Moreover, the Tenth
Circuit has observed that the FDCPA applies to the litigating
activities of lawyers which may include (as other courts have
held) the service of a complaint upon a debtor to facilitate
debt collection efforts or statements in written discovery
documents.[13]  James v. Wadas, 724 F.3d 1312, 1316 (10th Cir.
2013).

    4. § 1692f

    The court shall follow the reasoning and case authority
discussed in the court's holding as to the unconscionable acts
provisions of the KCPA and find that plaintiff has not stated a
cause of action for the violation of § 1692f.  The court notes
that the examples of "unfair or unconscionable" conduct set
forth in § 1692f are not the same as the examples described in
the KCPA, K.S.A. 50-627.  The court further acknowledges that

---

[13] The court in Toohey, 2016 WL 4473016 at *8 n.11 noted that the Eighth and
Eleventh Circuits have not followed O'Rourke.  See also, Kaymark v. Bank of
America, N.A., 783 F.3d 168, 177 (3rd Cir. 2015)("communication cannot be
uniquely exempted from the FDCPA because it is a formal pleading").

the examples of "unfair or unconscionable" conduct are a nonexclusive list. But, the court does not read plaintiff's allegations as falling within the examples listed in the federal statute or as properly characterized as unfair or unconscionable for the purposes of that statute.

Moreover, the court has already held that plaintiff's allegations state a plausible claim under § 1692e. Several courts have held that a viable claim under § 1692f must allege conduct that is not addressed by other provisions of the FDCPA if it the alleged misconduct is not within the listed provisions of § 1692f. E.g., <u>Baye v. Midland Credit Management, Inc.</u>, 2017 WL 3425438 *5 (E.D.La. 8/9/2017); <u>Winberry v. United Collection Bureau, Inc.</u>, 697 F.Supp.2d 1279, 1292-93 (M.D.Ala. 2010); <u>Baker v. Allstate Fin. Servs., Inc.</u>, 554 F.Supp.2d 945, 953 (D.Minn. 2008); <u>Foti v. NCO Financial Systems, Inc.</u>, 424 F.Supp.2d 643, 667 (S.D.N.Y. 2006).

   D. <u>Count Four - wrongful garnishment</u>

In Count Four of the first amended complaint, plaintiff alleges that defendant City of Topeka and the Hollins defendants instituted garnishment proceedings against plaintiff without a good-faith belief that the judgment upon which those proceedings

were based was valid.[14]  Plaintiff claims that the defendants are liable for wrongful garnishment.

The Hollins defendants and the defendant City of Topeka contend that the wrongful garnishment claim should be dismissed. In its brief in support of its motion to dismiss, the defendant City of Topeka cites the following provisions in the limited actions chapter of the Kansas statutes:

> Whenever a party has commenced postjudgment proceedings for the enforcement of a judgment, and such judgment is subsequently set aside, reversed on appeal or otherwise nullified, such party shall not be liable for damages as a result of such postjudgment proceedings, unless it can be proven that the judgment upon which such proceedings were based was fraudulently obtained.

K.S.A. 61-3302(e).  The Hollins defendants cite these provisions in their reply brief.  Plaintiff has not responded to this argument in her response brief to the City of Topeka's motion to dismiss.  Nor has she asked for leave to make a surreply in response to the Hollins defendants' citation to K.S.A. 61-3302(e) in their reply brief.

It appears to the court that K.S.A. 61-3302(e) applies to the facts alleged in this case and bars plaintiff's claim for damages for wrongful garnishment.

---

[14] The judgment upon which the garnishment order was issued was later found to be void because of improper service of process.

## E. Count Six - common law conversion

Plaintiff makes a common law conversion claim against defendants City of Topeka and the Hollins defendants in Count Six of the first amended complaint. The argumentation is similar to that raised against the wrongful garnishment claim. The court shall make the same holding that plaintiff's conversion claim is barred under the provisions of K.S.A. 61-3302(e).

## F. Count Seven - invasion of privacy

In Count Seven plaintiff alleges a claim for "invasion of privacy/intrusion upon seclusion." Plaintiff alleges quite generally that "[d]efendants intruded, physically or otherwise, upon Plaintiff's solitude, seclusion, and/or private affairs or concerns." Doc. No. 18, ¶ 149. Defendants argue that plaintiff has not alleged facts to support such a claim and the court agrees.

In Moore v. R.Z. Sims Chevrolet-Subaru, Inc., 738 P.2d 852, 856-57 (Kan. 1987), the Kansas Supreme Court stated that to prevail upon the claim plaintiff is making, "it is necessary to establish two factors: [f]irst, something in the nature of an intentional interference in the solitude or seclusion of a person's physical being, or prying into his private affairs or concerns, and second, that the intrusion would be highly offensive to a reasonable person." See also Hutchison v. United

<u>States</u>, 2017 WL 2264447 *10 (D.Kan. 5/23/2017)(applying factors stated in <u>Moore</u>).

As opposed to prying too much, here the crux of the facts alleged by plaintiff is that the Hollins defendants did not do enough to investigate plaintiff's military status and changes of name or address before proceeding to ask a state court for default judgment in two debt collection actions. The complaint alleges very little contact between plaintiff and defendants. These allegations do not describe a plausible claim that plaintiff's private affairs have been intruded upon in a highly offensive manner. Nor do the conclusory factual claims made in ¶ 149 and other paragraphs of Count Seven adequately allege an invasion of privacy claim.

G. <u>Count Eight - Outrage</u>

In Count Eight of the first amended complaint, plaintiff asserts a claim of outrage against all defendants. The court concurs with defendants that the facts alleged by plaintiff do not describe extreme and outrageous conduct. "Conduct is not extreme and outrageous unless a civilized society would regard it as exceeding the bounds of decency or utterly intolerable." <u>Caputo v. Professional Recovery Services, Inc.</u>, 261 F.Supp.2d 1249, 1265 (D.Kan. 2003)(discussing the elements of an outrage claim). Here, plaintiff alleges that there was a knowing or recklessly false declaration that upon careful investigation it

23

was determined that plaintiff was not on active military duty. It is further alleged that the false declaration was made in support of an application for a default judgment in two debt collection cases. This does not demonstrate a plausible claim of conduct which exceeds the bounds of decency or is utterly intolerable. See Nooruddin v. Comerica Inc., 2011 WL 5588806 (D.Kan. 11/16/2011)(false overdraft charges made without notice or explanation do not amount to extreme and outrageous misconduct); Fletcher v. Wesley Medical Center, 585 F.Supp. 1260, 1262 (D.Kan. 1984)(firing an employee for a false reason does not give rise to an outrage claim); In re Oliver, 2012 WL 1252955 *3-4 (Bankr.D.Kan. 4/13/2012)(numerous failures alleged by mortgagor against mortgagee including misapplication of funds and filing false pleadings with the court, do not amount to outrageous conduct); Moore v. State Bank of Burden, 729 P.2d 1205, 1211 (Kan. 1986)(bank's erroneous setoff of social security funds against a legitimate debt owed to the bank is not extreme or outrageous); Neufeldt v. L.R.Foy Construction Co., Inc., 693 P.2d 1194, 1198 (Kan. 1985)(false statement concerning the prospect of arrest made to debtor's wife regarding a bad check does not support an outrage claim); W-V Enterprises, Inc. v. Federal Sav. & Loan Ins. Corp., 673 P.2d 1112, 1122 (Kan. 1983)(fraudulent and deceptive statements made by financial institution to contractor were not sufficient to support outrage

claim); <u>Kape Roofing & Gutters, Inc. v. Chebultz</u>, 2016 WL 3655893 *12 (Kan.App. 7/8/2016)(filing a false affidavit to support a mechanic's lien, causing significant emotional upset of which the defendant had no direct knowledge, does not give rise to a claim of outrage).

IV. <u>Defendants City of Topeka and St. Francis' motions to dismiss shall be granted in part and denied in part</u>.

A. <u>Count Five – negligent supervision</u>

Plaintiff asserts a negligent supervision claim against defendants City of Topeka and St. Francis in Count Five of the first amended complaint. Plaintiff alleges that the City and St. Francis failed to properly supervise the Hollins defendants in the debt collection litigation. "Negligent supervision includes not only the duty to supervise but also includes the duty to control persons with whom the defendant has a special relationship including the defendant's employees or persons with dangerous propensities." <u>Marquis v. State Farm Fire and Cas. Co.</u>, 961 P.2d 1213, 1223 (Kan. 1998). Kansas courts have referred to <u>Restatement (Second) of Torts</u> § 414 (1965) in discussing the tort of negligent supervision. See <u>Hauptman v. WMC, Inc.</u>, 224 P.3d 1175, 1188 (Kan.App. 2010). Section 414 reads: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the

25

employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

The court finds that plaintiff has not alleged a plausible claim of negligent supervision. As argued by defendants City of Topeka and St. Francis, plaintiff has not alleged facts describing a special relationship from which a duty of control and a duty of care may be inferred. Plaintiff does not allege an employer/employee relationship. Nor does plaintiff allege that defendants City of Topeka and St. Francis retained the right to exercise detailed control over the work of the Hollins defendants by virtue of contract. Moreover, the Restatement section speaks to a duty to exercise reasonable care to protect against physical harm to others. Cases from this district have also emphasized this requirement. See Chen v. Dillard Store Services, Inc., 2016 WL 107933 *11-12 (D.Kan. 1/8/2016)(dismissing negligent supervision claim where no physical injury is alleged); Patton v. Entercom Kansas City, LLC, 2014 WL 2557908 *10-12 (D.Kan. 6/6/2014)(same). No physical harm, only emotional injury, is alleged by plaintiff. Thus, facts are not asserted which describe a claim of negligent supervision.[15]

---

[15] The defendant City of Topeka also alleges that plaintiff has not sufficiently pleaded compliance with the notice requirements of K.S.A. 12-105b(d) for bringing a tort claim against a municipality because plaintiff

B. <u>Liability as to the other counts</u>

The court has already given reasons to dismiss the common law claims asserted by plaintiff in Counts Four, Six, Seven and Eight, as well as certain claims under the KCPA and the FDCPA. See section III of this order. The issue becomes whether plaintiff has sufficiently alleged grounds for liability upon the statutory claims which the court has permitted to go forward as to the Hollins defendants.

One of plaintiff's theories is vicarious liability. The Supreme Court has stated that the Court assumes "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." <u>Meyer v. Holley</u>, 537 U.S. 280, 285 (2003). The court shall attempt to apply those rules to plaintiff's statutory claims.

As mentioned earlier, plaintiff alleges in the first amended complaint that the Hollins defendants were the <u>agents</u> of defendants St. Francis and City of Topeka. An agent may be an employee or an independent contractor. See <u>McCarthy v. Recordex Service, Inc.</u>, 80 F.3d 842, 853 (3rd Cir. 1996); <u>First Nat. Bank and Trust Co. v. Sidwell Corp.</u>, 678 P.2d 118, 124 (Kan. 1984). Because plaintiff does not allege an employer/employee

___

has chosen to do so in footnote 1 of the first amended complaint. The court finds that this is satisfactory, albeit not recommended.

relationship or facts supporting such an allegation, the court shall focus upon whether plaintiff has alleged facts which would support a plausible claim of vicarious liability of a principal for the acts of an independent contractor/attorney.

"Under Kansas law, the relation between an attorney and his client has been held to be one of agency to which the general rules of agency apply." Brinkley v. Farmers Elevator Mut. Ins. Co., 485 F.2d 1283, 1286 (10th Cir. 1973) (citing Pearcy v. First Nat. Bank in Wichita, 167 Kan. 696, 208 P.2d 217 (1949)). "A principal is subject to liability for its agent's tortious conduct only if the conduct 'is within the scope of the agent's actual authority or ratified by the principal.'" 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1251 (10th Cir. 2013)(quoting Restatement (Third) of Agency § 7.04 (2006)). "An agent acts with actual authority if it 'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" Id. (quoting Restatement (Third) of Agency § 2.01). This requires proof not only that an agent could reasonably believe that he had actual authority from the principal but also that the agent subjectively believed he had actual authority from the principal. Id. (citing Restatement (Third) of Agency § 2.02 cmt. e). Plaintiff does not allege facts in the complaint which plausibly indicate that plaintiff reasonably believed defendant

28

City of Topeka or defendant St. Francis gave actual authority to the Hollins defendants to make a false statement in support of an application for default judgment. Plaintiff does not make such an argument in response to the motion to dismiss.[16] Instead, plaintiff argues ratification.

Ratification "is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency, § 4.01(1). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Id. at § 4.01(2). "A person is not bound by a ratification made without knowledge of material facts involved in the original act when the person was unaware of such lack of knowledge." Id. at § 4.06. "Upon acquiring knowledge of the agent's unauthorized act, the principal should promptly repudiate the act. Otherwise, it will be presumed he has ratified and affirmed it." Adrian v. Elmer, 284 P.2d 599, 603

---

[16] Nor does case law appear to support such a claim upon the type of facts alleged in the complaint. See, e.g., Computer Aid, Inc. v. Hewlett-Packard Co., 56 F.Supp.2d 526, 538-39 (E.D.Pa. 1999)(client not responsible for alleged defamatory statements of attorneys unless client authorized or ratified the statements); Williams v. Burns, 463 F.Supp. 1278, 1284-86 (D.Colo. 1979)(client is not responsible for defamatory statement made by non-house counsel retained for advice on a transaction); Yale New Haven Hosp. v. Orlins, 1992 WL 110707 *1 (Sup.Ct.Conn. 5/11/1992)(client not liable for FDCPA violations alleged against client's attorneys); Chisler v. Randall, 259 P. 687, 689-90 (Kan. 1927)(client not responsible for unauthorized defamatory communication made by his attorney).

(Kan. 1955); see also <u>BioCore, Inc. v. Khosrowshani</u>, 41 F.Supp.2d 1214, 1231 (D.Kan. 1999).

Here, the facts alleged indicate it is plausible that plaintiff may prove that defendants City of Topeka and St. Francis were aware the Hollins defendants made false statements in applications for default judgment on their behalf and did not promptly repudiate these false statements. Therefore, the court shall not grant those parts of the motions to dismiss of defendants City of Topeka and St. Francis which seek to dismiss the statutory claims which the court did not dismiss against the Hollins defendants.

V. <u>Summary</u>

The motion to dismiss of the Hollins defendants (Doc. No. 26) and the motions to dismiss of defendants St. Francis and the City of Topeka (Doc. Nos. 29 & 33) are granted in part and denied in part. The court shall dismiss Counts Four through Count Eight of the first amended complaint. The court shall also dismiss plaintiff's claims of unfair and unconscionable acts under the KCPA and the FDCPA in Counts Two and Three.

**IT IS SO ORDERED**.

Dated this 13th day of September, 2017, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge